LEXINGTON LAW GROUP
Mark N. Todzo (California State Bar No. 168389)
Howard Hirsch (California State Bar No. 213209)
Joseph Mann (California State Bar No. 207968)
Lucas Williams (California State Bar No. 264518
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com

Attorneys for Plaintiffs
ANDREA GOLLOHER, MARISA FREEMAN, ROBERTA CHASE, JAMES HANKS, MICHAEL SHAPIRO, BRENDA BROWN, GRETCHEN SWENSON, CRYSTAL KENNY, KELLY BOTTARI, RENEE CONOVER, and SHANISHA SANDERS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA GOLLOHER, MARISA FREEMAN, ROBERTA CHASE, JAMES HANKS, MICHAEL SHAPIRO, BRENDA BROWN, GRETCHEN SWENSON, CRYSTAL KENNY, KELLY BOTTARI, RENEE CONOVER, and SHANISHA SANDERS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TODD CHRISTOPHER INTERNATIONAL, INC. DBA VOGUE INTERNATIONAL, a Florida Corporation, and DOES 1-100,<br><br>Defendants. | Case No. C 12-06002 RS<br><br>CLASS ACTION<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiffs Andrea Golloher, Marisa Freeman, Roberta Chase, James Hanks, Michael Shapiro, Brenda Brown, Gretchen Swenson, Crystal Kenny, Kelly Bottari, Renee Conover, and Shanisha Sanders ("Plaintiffs"), on behalf of themselves and those similarly situated based on information and belief and investigation of counsel, except for information based on personal knowledge, hereby allege:

## **INTRODUCTION**

1.      This First Amended Complaint seeks to remedy the unlawful, unfair, and deceptive business practices of defendant Todd Christopher International, Inc. dba Vogue International ("Defendant" or "Vogue") with respect to its cosmetic products (also referred to as personal care products) sold under the Organix brand name (the "Products").  The Products are advertised, marketed, labeled, sold, and represented as organic, but are composed almost entirely from ingredients that are not organic.  All of the Organix Products are prominently marketed and labeled as "Organix," a name which was chosen to look and sound like the word "organics" in order to represent that the Products are organic.  In addition, Defendant's marketing materials for the Organix Products are littered with statements that represent the Products as organic, and the front and back labels of some of the Products state that the Products contain organic ingredients. Plaintiffs and the Class reasonably believed Defendant's representations that the Products are organic. But-for Defendant's false and misleading identification of the Products as organic the Plaintiffs and the Class would not have purchased the Products or paid such a high price for the Products instead of purchasing truly organic products available from Defendant's competitors.

2.      Plaintiffs have, all along, perceived a need for resolution of the claims set forth in the original Complaint on a nationwide basis.  Since the filing of the original Complaint, facts evidencing liability have come to light that warrant this amendment.  Joinder of additional states in this amendment is based on the same core counts and legal theories as were set forth in the original Complaint.

3.      Organic products are made with organically grown plants.  As such, organic ingredients are produced without the use of pesticides and other harmful or potentially harmful chemicals.  Organic products have gained popularity such that over 70% of households in the

United States now use some organic products each year, even though such products typically cost more than their non-organic counterparts. Growing concerns over the use of harmful chemicals in the production of non-organic products, together with a desire for more healthy lifestyles, have spurred the popularity of organic products. One of the fastest growing markets for organic products is that of organic personal care products. Consumers such as Plaintiffs and the other members of the Class are willing to pay more for organic personal care products such as skin care, hair care, and body care in order to avoid harmful chemicals in favor of more natural ingredients. Defendant takes advantage of this segment of consumers by marketing, advertising, selling, labeling, and representing the Products as organic, and impliedly not containing harmful chemicals, when in fact such Products contain significant amounts of non-organic ingredients. In fact, the vast majority of the ingredients in the Products are not organic.

4. Defendant's conduct of advertising, marketing, selling, labeling, and representing the Products as organic, when in fact such Products are composed mainly of non-organic ingredients, constitutes unlawful, unfair, and deceptive conduct, is likely to deceive members of the public, is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, violates legislatively declared policies against misrepresenting the characteristics of goods and services, and harms the organic industry. As such, Defendant's marketing, labeling and advertising practices violate the consumer protection, unfair trade practices, and/or deceptive acts laws of all 50 states and the District of Columbia. Defendant's marketing, labeling, and advertising practices also breach the express warranties regarding the Products, and confer an unjust enrichment onto Defendant. Accordingly, pursuant to the consumer protection, express warranty, and unjust enrichment laws of each of these U.S. jurisdictions, and to remedy Defendant's illegal acts nationwide, Plaintiffs seek an order enjoining Defendant's unfair and deceptive acts or practices, awarding restitution to the individual victims of Defendant's unfair and deceptive practices, and damages.

5. California law expressly prohibits companies such as Defendant from engaging in this type of misleading labeling. The California Organic Products Act of 2003, Cal. Health & Safety Code § 110810, *et seq.* (hereinafter "COPA"), requires that any cosmetic product sold,

labeled, and/or represented as "organic" must be composed of at least 70% organically produced ingredients by weight or fluid volume, excluding water and salt. The Products are cosmetics that contain far less than 70% organically produced ingredients, excluding water and salt. Nevertheless, Defendant labels, sells, and represents the Products as organic.

6. Use of the Organix label calls into question other similar representations of products as organic, thereby denigrating the reputation of and eroding confidence in organic personal care products that comply with COPA as well as other regulatory provisions nationally.

**PARTIES**

7. Plaintiff Andrea Golloher is a resident of California who purchased one or more of the Products. On or about April 2011, Plaintiff Golloher purchased one of the Products at a retail store in San Jose, California. The front label of the Product, which Plaintiff Golloher reviewed prior to purchase, prominently displays the word "Organix." The front label of the Product also represented that the Product is made with "organic" ingredients. At the time of purchase, Plaintiff Golloher reasonably believed that the Product was either completely or at least mostly organic. Had Plaintiff Golloher known that the Product was made primarily from non-organic ingredients, Plaintiff would not have bought the Product at all, or would not have paid more for the Product than the cost of other non-organic hair products.

8. Plaintiff Marisa Freeman is a resident of California who purchased one or more of the Products. On or about November 2010, Plaintiff Freeman purchased two of the Products at a retail store in San Francisco, California. The front label of both Products, which Plaintiff Freeman reviewed prior to purchase, prominently displays the word "Organix." In addition, the front label of both Products represented that the Products are made with "organic" ingredients. At the time of purchase, Plaintiff Freeman reasonably believed that both Products were either completely or at least mostly organic. Had Plaintiff Freeman known that the Products were made primarily from non-organic ingredients, Plaintiff Freeman would not have bought the Products at all, or would not have paid more for the Products than the cost of other non-organic hair products.

9. Plaintiff Roberta Chase is a resident of New York who purchased one or more of the Products. On or about July 2010, Plaintiff Chase purchased two of the Products in Cobleskill,

New York. The front label of both products, which Plaintiff Chase reviewed prior to purchase, prominently displays the word "Organix." The front label of both Products also represented that the Products are made with "organic" ingredients. At the time of purchase, Plaintiff Chase reasonably believed that both Products were either completely or at least mostly organic. Had Plaintiff Chase known that the Products were made primarily from non-organic ingredients, Plaintiff Chase would not have bought the Products at all, or would not have paid more for the Products than the cost of other non-organic hair products.

10. Plaintiff James Hanks is a resident of New York who purchased one or more of the Products. On or about September 2012, Plaintiff Hanks purchased one of the Products in New York, New York. The front label of the product, which Plaintiff Hanks reviewed prior to purchase, prominently displays the word "Organix." At the time of purchase, Plaintiff Hanks reasonably believed that the Product was either completely or at least mostly organic. Had Plaintiff Hanks known that the Product was made primarily from non-organic ingredients, Plaintiff Hanks would not have bought the Product at all, or would not have paid more for the Product than the cost of other non-organic personal care products.

11. Plaintiff Michael Shapiro is a resident of Hawaii who purchased one or more of the Organix Products. During the period from on or about February 2008 up through February 2009, Plaintiff Shapiro regularly purchased two of the Products at retail stores in Haleiwa, Hawaii. The front labels of both Products, which Plaintiff Shapiro reviewed prior to purchase, prominently display the word "Organix." The Products' back labels also stated that the Products contain "organic" ingredients. At the time of his purchases, Plaintiff Shapiro reasonably believed that both Products were either completely or at least mostly organic. Had Plaintiff Shapiro known that the Products were made primarily from non-organic ingredients, he would not have bought the Products at all, or would not have paid more for the Products than the cost of other non-organic hair products.

12. Plaintiff Brenda Brown is a resident of the state of Washington who purchased one or more of the Organix Products. During the period from on or about January 2010 up through June 2012, Plaintiff Brown regularly purchased four of the Products at retail stores in Lacey,

Washington. During the period from on or about January 2010 up through June 2012, Plaintiff Brown also regularly purchased one of the Products at a retail store in Beaverton, Oregon. The front label of the Products, which Plaintiff Brown reviewed prior to purchase, prominently displays the word "Organix." The front label of the Products purchased also represented that the Products are made with "organic" ingredients. At the time of purchase, Plaintiff Brown reasonably believed the Products were either completely or at least mostly organic. Had Plaintiff Brown known that the Products were made primarily from non-organic ingredients, Plaintiff Brown would not have bought the Products at all, or would not have paid more for the Products than the cost of other non-organic hair products.

13. Plaintiff Gretchen Swenson is a resident of the state of Florida who purchased one or more of the Organix Products. During 2012, Plaintiff Swenson purchased two of the Products at two retail stores in Naples, Florida. The front label of the Products, which Plaintiff Swenson reviewed prior to purchase, prominently displays the word "Organix." At the time of purchase, Plaintiff Swenson reasonably believed that the Products were either completely or at least mostly organic. Had Plaintiff Swenson known that the Products were made primarily from non-organic ingredients, Plaintiff Swenson would not have bought the Products at all, or would not have paid more for the Products than the cost of other non-organic hair products.

14. Plaintiff Crystal Kenny is a resident of the state of Illinois who purchased one or more of the Organix Products. During the period from on or about March 2013 up through May 2013, Plaintiff Kenny purchased three of the Products at a retail store in Bolingbrook, Illinois. The front label of the Products, which Plaintiff Kenny reviewed prior to purchase, prominently displays the word "Organix." At the time of purchase, Plaintiff Kenny reasonably believed that the Products were either completely or at least mostly organic. Had Plaintiff Kenny known that the Products were made primarily from non-organic ingredients, Plaintiff Kenny would not have bought the Products at all, or would not have paid more for the Products than the cost of other non-organic hair products.

15. Plaintiff Kelly Bottari is a resident of the state of Massachusetts who purchased one or more of the Organix Products. On or about February 2013, Plaintiff Bottari purchased two of

the Products at a retail store in Hadley, Massachusetts. The front label of the Products, which Plaintiff Bottari reviewed prior to purchase, prominently displays the word "Organix." At the time of purchase, Plaintiff Bottari reasonably believed that the Product was either completely or at least mostly organic. Had Plaintiff Bottari known that the Product was made primarily from non-organic ingredients, Plaintiff Bottari would not have bought the Product at all, or would not have paid more for the Product than the cost of other non-organic personal care products.

16. Plaintiff Renee Conover is a resident of the state of North Carolina who purchased one or more of the Organix Products. On or about November 2012, Plaintiff Conover purchased two of the Products at a retail store in Asheville, North Carolina. The front label of the Products, which Plaintiff Conover reviewed prior to purchase, prominently displays the word "Organix." At the time of purchase, Plaintiff Conover reasonably believed that both Products were either completely or at least mostly organic. Had Plaintiff Conover known that the Products were made primarily from non-organic ingredients, Plaintiff Conover would not have bought the Products at all, or would not have paid more for the Products than the cost of other non-organic hair products.

17. Plaintiff Shanisha Sanders is a resident of the state of Ohio who purchased one or more of the Organix Products. Since at least August 2012, Plaintiff Sanders purchased several of the Products at retail stores in and around Columbus, Ohio. The front label of the Products, which Plaintiff Sanders reviewed prior to purchase, prominently displays the word "Organix." At the time of purchase, Plaintiff Sanders reasonably believed that the Products were either completely or at least mostly organic. Had Plaintiff Sanders known that the Products were made primarily from non-organic ingredients, Plaintiff Sanders would not have bought the Products at all, or would not have paid more for the Products than the cost of other non-organic personal care products.

18. Defendant Todd Christopher International, Inc. dba Vogue International is a Florida corporation with its principal place of business in Oldsmar, Florida. Defendant advertises, markets, distributes, and sells the Products in all 50 states and the District of Columbia.

19. DOES 1 through 100 are persons or entities whose true names and capacities are presently unknown to Plaintiffs, and who therefore are sued by such fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named defendants

perpetrated some or all of the wrongful acts alleged herein and are responsible in some manner for the matters alleged herein. Plaintiffs will amend this Complaint to state the true names and capacities of such fictitiously named defendants when ascertained.

20. Defendant Todd Christopher International, Inc. dba Vogue International and DOES 1-100 are collectively referred to herein as "Defendants."

**JURISDICTION AND VENUE**

21. This Court has original jurisdiction over all causes of action asserted herein pursuant to 28 U.S. C. § 1332(d) because this is a class action involving more than 100 class members, a substantial number of the members of the proposed Class are citizens of a state different from that of Defendant, and the amount in controversy, in the aggregate, exceeds the sum of $5,000,000, exclusive of interest and costs. In its Notice of Removal regarding Plaintiffs' original complaint, Docket No. 1 (filed Nov. 26, 2012), Defendant stated that the case was removable on these same grounds.

22. This Court has jurisdiction over Defendants because each is a corporation or other entity that has sufficient minimum contacts in California, is a citizen of California, or otherwise intentionally avails itself of the California market either through the distribution, sale, and/or marketing of the Products in the State of California or by having a facility located in California so as to render the exercise of jurisdiction over it by a federal Court in California consistent with traditional notions of fair play and substantial justice.

23. Venue is proper pursuant to 28 U.S.C. § 1391(a) because Defendant is a resident of this District pursuant to 28 U.S.C. § 1391(c), and a substantial part of the events or omissions giving rise to the claim occurred in this District.

24. **Intradistrict Assignment (L.R. 3-2(c) and (d) and 3.5(b))**: This action arises in San Francisco County in that a substantial part of the events which give rise to the claims asserted herein occurred in San Francisco County.

**BACKGROUND FACTS**

25. In 2006, Defendants introduced their "Organix" line of Products. Although the Products contain very small quantities of organic ingredients, Defendants selected a brand name

that looks nearly identical to, and sounds identical to, the word "organics," in order to exploit the growing consumer demand for organic products. To ensure that consumers made the association between "Organix" and "organics," Defendants also emblazoned the word "organic" on the front label of the Products in bold type and littered their advertising materials with references to the Products' allegedly organic properties. Nevertheless, the Products are largely composed of ingredients which Defendants admit are not organic.

26. Defendants' scheme to exploit consumer demand for organic products by falsely advertising the Products as organic has been extraordinarily successful. Since the brand's inception, annual dollar sales of the Products have increased from almost $9 million in 2007, to over $30 million in 2008, to over $40 million in 2009, to over $50 million in 2010, to over $60 million through the first half of 2011 (the last time period for which sales figures are publicly available).

27. In or about May 2007, Vogue submitted its initial application to the United States Patent and Trademark Office ("USPTO") to register the Organix trade name for use on personal care products. In or about March 2008, the USPTO rejected this application on the grounds that Vogue had ***not*** limited the description of goods to personal care products "<u>comprised of primarily organic ingredients</u>" (emphasis in original).

28. In or about October 2008, Vogue submitted another application to the USPTO, and yet again failed to limit the description of goods to organic personal care products. The USPTO's initial response was to reject the application again, finding that, "If applicant uses, or intends to use, the mark on goods other than those that are organic, such use would be deceptive . . . . Therefore, applicant must amend the identification by limiting it to organic goods." In response, Vogue amended its application to limit use of the trademark Organix on "organic" personal care products, which USPTO ultimately approved. Although Vogue changed the description of its goods to secure USPTO approval of the trademark, Defendants did not change the formulation of the Products. In fact, the Products all contain less than 10 percent organic ingredients – in most instances, far less.

29. Defendants advertise, market, label, sell, and represent the Products as organic. In

recognition of the fact that consumers will pay more for organic products, Defendants prominently display the word "Organix" on the front label of every Product.  Defendants advertise the Products within the Organix line as organic by use of the Organix brand name and by inclusion of the word "organic" on the Products' front and/or back labels and in Product advertising.

30.     While the Products are marketed in various blends (or "flavors" – *e.g.*, "Coconut Milk"), in any given promotional cycle or year Defendants utilize uniform containers, packaging, marketing, and advertising materials for the Products regardless of blend/flavor.  For instance, the Products from each promotional cycle always contain the word "Organix" emblazoned on the front of the packaging in the same location, coloring, and font.

31.     While continuing to use the basic "Organix" theme, Defendants have, at times, updated and changed their containers, packaging, marketing, and advertising to appeal to prevailing market trends and attracting new customers who may not have been drawn to Defendants' products previously, while maintaining the interest of the existing customer base.  Accordingly, the Class size has increased over time as have the resulting damages attributable to the sales of "Organix" brand products.

32.     Since the brand's inception, Defendant has continued to push and expand its use of the "Organix" concept in various ways to ever increase its market share.  In addition to concerns regarding the effect of non-organic chemicals on their own bodies, many consumers who embrace the "organic lifestyle" pursue such a lifestyle by purchasing organic products.  By misleading consumers about its Products, Defendant undermines those efforts, misleading consumers to buy Defendant's non-organic products in lieu of truly organic ones.

33.     Each year, Defendant has issued new and updated "Organix"-themed advertising in print and on its website, blog, Facebook page and Twitter account, as well as in other promotions and promotional tie-ins.  For example, in addition to noting the organic attributes of Defendant's products, such "Organix"-themed advertising has, at different times, focused on Vogue's "green packaging," the environment, nature, natural elements of the products, and the planet, all of which Defendant used to retain consumer interest as well as attract new customers.

34.     The Products are all intended to be rubbed, poured, sprinkled, or sprayed on,

introduced into, or otherwise applied to, the human body, or any part of the human body, for cleansing, beautifying, promoting attractiveness, or altering the appearance, and are thus "cosmetics" under California law. Cal. Health & Safety Code § 109900.

35. While prominently displaying the word "Organix" on the front label of every Product, Defendants also include an ingredient list in small print on the back label of each Product. The list of ingredients is in a substantially smaller font than the text on the front label. Although California law permits Defendants to identify the ingredients which are organically produced with an asterisk (*), Defendants do not designate any of the ingredients as organic. Thus, there is no way for even the most discerning consumer who pores over every detail on the ingredient list to determine whether all or none of the ingredients are organic.

36. Defendants' ongoing practice of advertising, marketing, labeling, selling, and/or representing the Products as organic – when in fact, the Products contain minimal organic ingredients – is likely to deceive ordinary consumers of the Products and has in fact deceived Plaintiffs. Plaintiffs reasonably understood the labeling of the Products to mean what it says – that the Products are organic. Based on the label claims that the Products are organic, Plaintiffs believed that the Products are entirely or predominantly made with organic ingredients. In reliance on Defendants' claims that the Products are organic, Plaintiffs were willing to pay more for the Products than similar products that do not claim to be organic, and in fact did pay a premium for the Products.

37. COPA includes strict, objective standards regarding what constitutes an organic cosmetic product. Under COPA, "cosmetic products sold, labeled, or represented as organic or made with organic ingredients shall contain, at least 70 percent organically produced ingredients." Cal. Health & Safety Code §110838(a). Calculating the percentage of organically produced ingredients under COPA is straightforward. For products that are sold in solid form, the percentage of organic ingredients is calculated by dividing the weight of the organic ingredients by the total weight of the product, excluding the weight of water and salt. *Id.* at §110838(b). For products that are sold in liquid form, the percentage of organic ingredients is calculated by dividing the fluid volume of the organic ingredients by the fluid volume of the product as a whole,

excluding water and salt. *Ibid*.

38. Under COPA, "sold as organic" means "any use of the term 'organic,' 'organically grown,' or grammatical variations of those terms, whether orally or in writing, in connection with any product grown, handled, processed, sold, or offered for sale in this state, including, but not limited to, any use of these terms in labeling or advertising of any product and any ingredient in a multi-ingredient product." Cal. Health & Safety Code §110815(k).

39. Defendants' use of the word "organix" on their advertising, packaging, and labeling of the Products – which looks nearly identical to, and sounds identical to, the word "organics" – constitutes selling, labeling, and representing the Products as organic under COPA. The Products are thus "sold as organic" pursuant to COPA, as they are advertised and labeled as "organix" and sold in California. In addition, Defendants' use of the word "organic" on the Product labels, on their websites for the Products and in their advertising also constitutes selling, labeling, and representing the Products as organic under COPA.

40. Similarly, Defendants' use of the words "organix" and "organic" in the advertising, marketing, packaging, and labeling of the Products are representations made in connection with the sale of the Products and thus constitute express warranties for the Products.

41. COPA includes a private attorney general provision authorizing "any person" to sue to enjoin any violations of the statute. Cal. Health & Safety Code § 111910(a). In 2011, pursuant to this provision, the Center for Environmental Health sued Vogue in California state court for its violations of COPA. *See Center for Environmental Health ("CEH") v. Advantage Research Laboratories, Inc., et al.*, Alameda County Case No. RG11-580876. On September 13, 2012, the Court in that action entered a Consent Judgment requiring Vogue to change the name of the Products in California from "Organix" to "OGX" by mid-2013 unless the Products are reformulated to contain at least 70 percent organically produced ingredients. Plaintiffs here are not seeking any relief that is inconsistent with the terms of that Consent Judgment. However, because the *CEH* case was limited to injunctive relief under COPA's private attorney general provision, the Consent Judgment did not provide any monetary relief to Plaintiffs or any other affected consumers, did not include any corrective advertising to ameliorate the deception in the

marketplace caused by Vogue's longstanding use of the name Organix on the Products, and did not provide any relief whatsoever outside of California. Thus, while Vogue has committed to reformulating the Products or changing the Products' name to OGX in California, the company apparently intends to continue to market the same Products for sale under the Organix name elsewhere.

**CLASS ACTION ALLEGATIONS**

42. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of themselves and the following class of similarly situated individuals nationwide who purchased the Products in every state and the District of Columbia:

> All persons who purchased the Products that were sold under the Organix brand name in the United States on or after October 25, 2008. Specifically excluded from this Class are Defendants; the officers, directors, or employees of Defendants; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendants. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

(the "Class").

43. The Class is sufficiently numerous, as it includes thousands of persons who have purchased the Products. Plaintiffs are unable to state the precise number of potential members of the proposed Class because that information is in the possession of Defendants and their retail customers. However, the number of members in the proposed Class is so numerous that joinder would be impracticable for purposes of Rule 23(a)(1). The disposition of the claims of the members of the Class in this class action will substantially benefit both the parties and the Court.

44. There is a community of interest among members of the proposed Class in that there are questions of law and fact common to the proposed Class for purposes of Rule 23(a)(2), including whether Defendants' labels, advertisements, and packaging include uniform

misrepresentations that misled Plaintiffs and the other members of the Class to believe that the Products were predominantly made with organic ingredients. Proof of a common set of facts will establish the liability of Defendants and the right of each member of the Class to relief.

45. Plaintiffs assert claims that are typical of the claims of the Class for purposes of Rule 23(a)(3). Plaintiffs and all members of the Class have been subjected to the same wrongful conduct because they have purchased the Products which are labeled and sold as organic, but, in fact, are not. Plaintiffs and the other members of the Class have thus all overpaid for the Products.

46. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class for purposes of Rule 23(a)(4). Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

47. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class. These common legal and factual questions, which do not vary among Class members and which may be determined without reference to the individual circumstances of any Class member, include but are not limited to the following:

a. whether Defendants advertise, market, label, and sell the Products by representing that the Products are "organic";

b. whether the Products are predominantly composed of organic ingredients;

c. whether Defendants' conduct of selling the Products as organic when such Products are not composed predominantly of organic ingredients is likely to deceive the members of the Class;

d. whether Defendants' conduct in advertising and marketing the Products constitutes an unfair or deceptive act or practice in the conduct of trade or commerce;

e. whether Plaintiffs and the other members of the Class are entitled to injunctive and other equitable relief based on Defendants' violations of state

and District of Columbia consumer protection laws;

f. whether Plaintiffs and the other members of the Class are entitled to an award of damages as a result of Defendants' violations of state and District of Columbia consumer protection laws;

g. whether Defendants' representations concerning the Products constitute express warranties with regard to the Products pursuant to the laws of every state and the District of Columbia;

h. whether Defendants breached the express warranties they have made with regard to the Products;

i. whether Plaintiffs and the other members of the Class are entitled to damages resulting from Defendants' breach of the express warranties made regarding the Products in every state and the District of Columbia;

j. whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Class, thereby entitling Plaintiffs and the members of the Class to restitution or disgorgement of all benefits derived by Defendants.

Defendants utilize advertisements and packaging that include uniform misrepresentations that misled Plaintiffs and the other members of the Class. Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

48. Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Members of the Class have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct. Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class members' claims is concerned. Absent a representative class action, members of the Class would continue to suffer losses for which they would have no remedy, and Defendants would

unjustly retain the proceeds of their ill-gotten gains. Even if separate actions could be brought by individual members of the Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other members of the Class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

**FIRST CAUSE OF ACTION**
**(Plaintiffs, On Behalf of Themselves and the Class, Allege Violations of Consumer Protection Laws)**

49. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 48, inclusive.

50. As a theory of recovery distinct from and independent of the other counts alleged herein, Plaintiffs seek relief on behalf of themselves and the members of the Class under the consumer protection, unfair trade practices, and deceptive acts laws of each of the following jurisdictions:

a. **Alabama:** Alabama's Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.*, including but not limited to Ala. Code §§ 8-19-5(2), (3), (5), (7), (8), (9), and (27);

b. **Alaska:** Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*, including but not limited to Alaska Stat. §§ 45.50.471(3), (4), (6), (7), (8), (11), and (12).

c. **Arizona:** Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*;

d. **Arkansas:** Arkansas's Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*, including but not limited to Ark. Code Ann. §§ 4-88-107(1), (2) , (3), and (10);

e. **California:** California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, 1770, *et seq.*, including but not limited to Cal. Civ. Code §§ 1770(a)(2), (3), (5), (7), (8), and (9);

f. **Colorado:** Colorado's Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*, including but not limited to Colo. Rev. Stat. §§ 6-1-101(1)(b), (c), (e), (g), (h), (i), and

(u);

g. **Connecticut:** Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*;

h. **Delaware:** Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.*, and Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*, including but not limited to Del. Code Ann. tit. 6, §§ 2532(a)(2), (3), (5), (7), (8), (9), and (12);

i. **District of Columbia:** the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*, including but not limited to D.C. Code §§ 28-3904(a), (d), (e), (f), (f-1), (g), and (h);

j. **Florida:** Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*;

k. **Georgia:** Georgia's Fair Business Practices Act, Ga. Code Ann. § 10-1-390, *et seq.*, including but not limited to Ga. Code Ann. §§ 10-1-393(b)(2), (3), (5), (7), (8) and (9);

l. **Hawaii:** Hawaii's Deceptive Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.*, including but not limited to Haw. Rev. Stat. § 481A-3(a)(2), (3), (5), (7), (8), (9), and (12);

m. **Idaho:** Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*, including but not limited to Idaho Code Ann. § 48-603(2), (3), (5), (7), (8), (9), and (17);

n. **Illinois:** Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.*, and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/1, *et seq.*, including but not limited to 815 Ill. Comp. Stat. § 510/2(a)(2), (3), (5), (7), (8), (9), and (12);

o. **Indiana:** Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*;

p. **Iowa:** Iowa's Consumer Fraud Act, Iowa Code § 714.16;

q. **Kansas:** Kansas's Consumer Protection Act, Kan. Stat. Ann. § 50-623, *et seq.*, including but not limited to Kan. Stat. Ann. § 50-626(b)(1)(A), (1)(B), (1)(D), (1)(F), (2), (3), and (4);

r. **Kentucky:** Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*;

s. **Louisiana:** Louisiana's Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann.§ 51:1401, *et seq.*;

t. **Maine:** Maine's Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, § 205-A, *et seq.*, and Deceptive Trade Practices Act, Me. Rev. Stat. tit. 10, § 1211, *et seq.*, including but not limited to Me. Rev. Stat. tit. 10, § 1211(1)(B), (C), (E), (G), (H), (I), (L);

u. **Maryland:** Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*, including but not limited to Md. Code Ann. Com. Law § 13-301(1), (2)(i), (2)(ii), (2)(iv), (3), (4), and (9)(i);

v. **Massachusetts:** Massachusetts's Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 1, *et seq.*;

w. **Michigan:** Michigan's Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq.*, including but not limited to Mich. Comp. Laws § 445.903(1)(a), (c), (e), (f), (g), (s), (bb), and (cc);

x. **Minnesota:** Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*, and Uniform Deceptive Trade Practices law, Minn. Stat. § 325D.43, *et seq.*, including but not limited to Minn. Stat. § 325D.44(2), (3), (5), (7), (8), (9), and (13);

y. **Mississippi:** Mississippi's Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*, including but not limited to Miss. Code Ann. § 75-24-5(2)(b), (c), (e), (g), (h), and (i);

z. **Missouri:** Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

aa. **Montana:** Montana's Unfair Trade Practices and Consumer Protection Act, Mont. Code. Ann. § 30-14-103, *et seq.*, and § 30-14-201, *et seq.*;

bb. **Nebraska:** Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.*, and Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*, including but not limited to Neb. Rev. Stat. § 87-302(a)(2), (3), (5), (7), (8), and (9);

cc.    **Nevada:**  Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. § 598.0903, *et seq.*, including but not limited to Nev. Rev. Stat. Ann. § 598.0915(2), (3), (5), (7), (8), (9), (15), and Nev. Rev. Stat. Ann. § 41.600;

dd.    **New Hampshire:**  New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*, including but not limited to N.H. Rev. Stat. Ann. § 358-A:2(II), (III), (V), (VII), (VIII), and (IX);

ee.    **New Jersey:**  New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*;

ff.    **New Mexico:**  New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*, including but not limited to N.M. Stat. Ann. § 57-12-2(D)(2), (3), (5), (7), and (8);

gg.    **New York:**  New York's Deceptive Practices Act, N.Y. Gen. Bus. Law §§ 349 and 350;

hh.    **North Carolina:**  North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

ii.    **North Dakota:**  North Dakota's Unlawful Sales or Advertising Practices Law, N.D. Cent. Code § 51-15-01, *et seq.*;

jj.    **Oklahoma:**  Oklahoma's Consumer Protection Act , Okla. Stat. tit. 15, § 751, *et seq.*, including but not limited to Okla. Stat. tit. 15, § 753(2), (3), (5), (7), (8), and (20), and Deceptive Trade Practices Act, Okla. Stat. tit. 78, § 51, *et seq.*, including but not limited to Okla. Stat. tit. 78, § 53(2), (3), (5), (7), (8), and (9);

kk.    **Ohio:**  Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio Rev. Code Ann. § 4165.01, *et seq.*, including but not limited to Ohio Rev. Code Ann. § 4165.02(A)(2)(3)(7)(9)(10)(11);

ll.    **Oregon:**  Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq.*, including but not limited to Or. Rev. Stat. § 646.608(1)(b), (c), (e), (g), (h), (i) and (u);

mm.    **Pennsylvania:**  Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*, including but not limited to 73 Pa. Stat. Ann. § 201-2(4)(ii), (iii), (v), (vii), (viii), (ix), and (xxi);

nn. **Rhode Island:** Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*, including but not limited to R.I. Gen. Laws § 6-13.1-1(6)(ii), (iii), (v), (vii), (viii), (ix), (xiii), and (xiv);

oo. **South Carolina:** South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*;

pp. **South Dakota:** South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*;

qq. **Tennessee:** Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*, including but not limited to Tenn. Code Ann. § 47-18-104(b)(2), (3), (5), (7), (8), and (9);

rr. **Texas:** Texas's Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, including but not limited to Tex. Bus. & Com. Code Ann. § 17.46(b)(2), (3), (5), (7), (8), and (9);

ss. **Utah:** Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*, including but not limited to Utah Code Ann. § 13-11a-3(1)(b), (c), (e), (g), (h), (i), and (t);

tt. **Vermont:** Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*;

uu. **Virginia:** Virginia's Consumer Protection Act, Va. Code Ann. § 59.1-198, *et seq.*;

vv. **Washington:** Washington's Consumer Protection Act, Rev. Code Wash. § 19.86.010, *et seq.*;

ww. **West Virginia:** West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, *et seq.*, and W. Va. Code § 46A-6-101, *et seq.*, including but not limited to W. Va. Code § 46A-1-102(7)(B), (C), (E), (G), (H), (I), (L), and (M);

xx. **Wisconsin:** Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*;

yy. **Wyoming:** Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

Each of the aforementioned laws prohibits unfair and deceptive acts or practices in the conduct of trade or commerce within that jurisdiction. The referenced conduct includes that which directly and indirectly injures the Plaintiffs and Class members, by:

a. Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendant or Defendant's Products;

b. Causing confusion or misunderstanding as to Defendant's or Defendant's Products' affiliation, connection, or association with, or certification by another;

c. Representing that the Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

d. Representing that Defendant has sponsorship, approval, status, affiliation, or connection that it does not have;

e. Representing that the Products are of a particular standard, quality, or grade, when they are of another;

f. Disparaging the goods, products, or business of another by false or misleading representation of fact; and

g. Advertising the Products with intent not to sell them as advertised.

51. Defendants have engaged and continue to engage in conduct that is likely to deceive members of the public in each of these jurisdictions, including members of the Class, and that did, in fact, deceive Plaintiffs. This conduct includes, but is not limited to, misrepresenting that the Products are organic when, in fact, the Products are not composed predominantly of organic ingredients.

52. Plaintiffs purchased the Products after reviewing the front of the label of such Product based on Defendants' representations that the Products are organic. Plaintiffs would not have purchased the Products at all, or would not have paid such a high price for the Products, but for Defendants' false promotion of the Products as organic. Plaintiffs have thus suffered damages.

53. Pursuant to consumer protection, unfair trade practices, and deceptive acts laws of the aforementioned jurisdictions, Plaintiffs and the other members of the Class are entitled to an

order enjoining the above-described unfair and deceptive acts and practices of Defendants, an award of actual, punitive, treble, and/or statutory damages, an award of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court or permitted pursuant to the relevant law.

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

**SECOND CAUSE OF ACTION**
**(Plaintiffs, On Behalf of Themselves and the Class, Allege Breach of Express Warranty)**

54. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 53, inclusive.

55. Defendants' representations that the Products are organic constitute affirmations of fact made with regard to the Products as well as descriptions of the Products. Defendants make these representations regarding the Products in all 50 states and the District of Columbia.

56. Defendants' representations that the Products are organic are made on the Products' labels, Defendants' websites promoting the Products, advertising for the Products, and Product promotions, and are thus part of the basis of the bargain between Defendants and purchasers of the Products. Accordingly, such representations constitute express warranties.

57. As set forth in the paragraphs above, Defendants' statements concerning the Products are false.

58. Defendants have thus breached their express warranties concerning the Products in violation of the express warranty laws of every state and the District of Columbia.

59. By letters dated July 5, 2012 and July 22, 2013, Plaintiffs provided notice to Defendants in advance of filing this complaint to apprise them of the claims set forth herein and demanding relief on behalf of themselves and the other members of the Class, including monetary damages. As of the date of the filing of this Complaint, Defendants have not provided the relief requested.

60. Plaintiffs and members of the Class have suffered damages as a result of Defendants' breach in that they paid for Products with qualities and benefits which they failed to receive.

61. As a theory of recovery distinct from and independent of the other counts alleged herein, pursuant to the express warranty laws of the aforementioned jurisdictions, Plaintiffs and the other members of the Class are entitled to an award of compensatory damages.

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

**THIRD CAUSE OF ACTION**
**(Plaintiffs, On Behalf of Themselves and the Class, Allege Restitution/Unjust Enrichment)**

62. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 61, inclusive.

63. Consumers, such as Plaintiffs and the other members of the Classes, are willing to pay more for organic personal care products. Defendants advertise, market, label, sell, and represent the Products as organic, when in fact such Products contain significant amounts of non-organic ingredients.

64. Had Plaintiffs known that the Products were made primarily from non-organic ingredients, Plaintiffs would not have bought the Products at all, or would not have paid more for the Products than the cost of other non-organic personal care products.

65. Defendants have benefitted from their advertising, marketing, and labeling practices concerning the Products, and it would be inequitable under the circumstances for Defendants to be permitted to retain these benefits.

66. To the extent that full relief is unavailable under any of the other causes of action pleaded in this Complaint, Plaintiffs and members of the Class have no adequate remedy at law.

67. As a theory of recovery distinct from and independent of the other counts alleged herein, Plaintiffs and members of the Class are entitled to restitution of the benefits they conferred onto Defendants by purchasing Products and/or disgorgement of Defendants' profits from Product sales.

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and relief against Defendants as

follows:

A. That the Court declare this a class action;

B. That the Court preliminarily and permanently enjoin Defendants from conducting their business through the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

C. That the Court order Defendants to conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits, and qualities Defendants have claimed;

D. That the Court order Defendants to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

E. That the Court order Defendants to notify each and every member of each of the Class of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain relief from Defendants;

F. That the Court award actual, punitive, treble, and/or statutory damages to Plaintiffs and each member of the Class, where permitted under the consumer protection, unfair trade practices, or deceptive acts law of any corresponding state or the District of Columbia;

G. That the Court award damages to Plaintiffs and the members of the Class to compensate them for Defendants' breach of the express warranties created with regard to the Products;

H. That the Court order Defendants to pay restitution and/or disgorgement of profits to Plaintiffs and the members of the Class, in an amount to be determined by the Court, to ensure that Defendants are not unjustly enriched by the sale of the Products nationwide;

I. That the Court assess pre- and post-judgment interest on any monetary amounts awarded;

J. That the Court grant Plaintiffs their reasonable attorneys' fees and costs of suit pursuant to any applicable state consumer protection law, the common fund doctrine, and/or any other appropriate source of law or legal theory; and

K. That the Court grant such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: August 09, 2013

LEXINGTON LAW GROUP

*/s/ Mark N. Todzo*

Mark N. Todzo (State Bar No. 168389)
Howard Hirsch (State Bar No. 213209)
Joseph Mann (California State Bar No. 207968)
Lucas Williams (California State Bar No. 264518)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com

Attorneys for Plaintiffs ANDREA GOLLOHER, MARISA FREEMAN, ROBERTA CHASE, JAMES HANKS, MICHAEL SHAPIRO, BRENDA BROWN, GRETCHEN SWENSON, CRYSTAL KENNY, KELLY BOTTARI, RENEE CONOVER, and SHANISHA SANDERS