LEXINGTON LAW GROUP
Mark N. Todzo (CA State Bar No. 168389)
Howard Hirsch (CA State Bar No. 213209)
503 Divisadero Street
San Francisco, CA  94117
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com
hhirsch@lexlawgroup.com

Attorneys for Plaintiffs
ANDREA GOLLOHER, MARISA FREEMAN,
ROBERTA CHASE, JAMES HANKS, MICHAEL
SHAPIRO, BRENDA BROWN, GRETCHEN
SWENSON, CRYSTAL KENNY, KELLY BOTTARI,
RENEE CONOVER, and SHANISHA SANDERS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA GOLLOHER, MARISA FREEMAN, ROBERTA CHASE, JAMES HANKS, MICHAEL SHAPIRO, BRENDA BROWN, GRETCHEN SWENSON, CRYSTAL KENNY, KELLY BOTTARI, RENEE CONOVER, and SHANISHA SANDERS, on behalf of themselves and all others similarly situated,<br><br>                      Plaintiffs,<br><br>     vs.<br><br>TODD CHRISTOPHER INTERNATIONAL, INC. DBA VOGUE INTERNATIONAL, a Florida Corporation, and DOES 1-100,<br><br>                    Defendant | Case No. C 12-06002 RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPEAL BONDS AND POST-JUDGMENT DISCOVERY**<br><br>Date:      July 10, 2014<br>Time:     1:30 p.m.<br>Location: Courtroom 3, 17th Floor<br>Judge:   Hon. Richard Seeborg<br><br>[Filed concurrently with Declaration of Howard Hirsch] |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      REQUIRING THE OBJECTORS TO POST APPEAL BONDS
AS A CONDITION TO PROSECUTING THEIR APPEALS IS APPROPRIATE. . . . . . 5

      A.      The Financial Ability Factor Weighs In Favor Of
Requiring The Objectors To Post Appeal Bonds.. . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.      The Risk That The Out-Of-State Objectors Will Not
Pay Plaintiffs' Costs If The Court's Judgment Is Affirmed
On Appeal Weighs In Favor Of Requiring Appeal Bonds.. . . . . . . . . . . . . . . . . . 7

      C.      The Patent Frivolousness Of The Objectors' Appeals
Warrants The Imposition Of Appeal Bonds.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.      Ms. Morrison's Appeal Is Meritless.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            2.      Ms. Hignite's Appeal Is Meritless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            3.      Ms. Cochran's Appeal Is Meritless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.      Appeal Bonds of $12,968 Are Necessary To Cover
The Costs Of the Objectors' Frivolous Appeals. . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.      Plaintiffs' FRAP 39 Costs Related To The Appeals. . . . . . . . . . . . . . . . 14

            2.      Plaintiffs' Administrative Costs As A Result Of The Appeals... . . . . . . . 14

II.     ALLOWING LIMITED DISCOVERY RELEVANT TO THE
OBJECTORS' APPEALS IS APPROPRIATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PLAINTIFFS' MOTION FOR APPEAL BOND & POST-JUDGMENT DISCOVERY

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Azizian v. Federated Dep't Stores, Inc.,*
    499 F.3d 950 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

4

*Dennings v. Clearwire Corp.,*
    928 F. Supp. 2d 1270 (W.D. Wash. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

5

*Embry v. ACER Am. Corp.,*
    C 09-01808 JW (N.D. Cal. June 5, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

6

7

*Fleury v. Richemont N. Am., Inc.,*
    C-05-4525 EMC (N.D. Cal. October 21, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8

*Gemelas v. Dannon Co.,*
    No. 1:08-CV-236 (N.D. Ohio August 31, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9

10

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11

*In re Apple iPhone 4 Products Liab. Litig.,*
    5:10-MD-2188 RMW (N.D. Cal. August 10, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12

13

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    281 F.R.D. 531 (N.D. Cal. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14

*In re EasySaver Rewards Litig.,*
    921 F. Supp. 2d 1040 (S.D. Cal. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15

16

*In re MagSafe Apple Power Adapter Litig.,*
    C 09-01911 JW (N.D. Cal. May 31, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

17

*In re Netflix Priv. Litig.,*
    5:11-CV-00379-EJD (N.D. Cal. November 25, 2013). . . . . . . . . . . . . . . . . . . . . . . *passim*

18

19

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    520 F. Supp. 2d 274 (D. Mass. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20

*TFT-LCD (Flat Panel) Antitrust Litig.,*
    289 F.R.D. 548 (N.D. Cal. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

21

22

*In re Wal-Mart Wage & Hour Employment Practices Litig.,*
    No. 2:06-CV-00225-PMP-PAL (D. Nev. March 8, 2010). . . . . . . . . . . . . . . . . . . . . 8, 13

23

*Laguna v. Coverall North America,*
    12-55479 __ F.3d__ (9th Cir. June 3, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 16

24

25

*Lemus v. H & R Block Enterprises LLC.,*
    C 09-3179 SI (N.D. Cal. August 22, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

26

*Lymburner v. U.S. Fin. Funding, Inc.,*
    C-08-00325 EDL (N.D. Cal. February 7, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27

28

*Martino v. Denevi,*
   227 Cal. Rptr. 354 (Cal. App. 1st Dist. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Miletak v. Allstate Ins. Co.,*
   C 06-03778 JW (N.D. Cal. August 27, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 14

*Nachshin v. AOL, LLC,*
   663 F.3d 1034 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Schulken v. Washington Mut. Bank,*
   09-CV-02708-LHK (N.D. Cal. April 2, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Yingling v. eBay, Inc.,*
   C 09-01733 JW (N.D. Cal. July 5, 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**RULES**

Fed. R. App. P. 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. App. P. 39(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. App. P. 39(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**OTHER AUTHORITIES**

9th Cir. Rules 39-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION FOR APPEAL BOND & POST-JUDGMENT DISCOVERY

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 10, 2014 at 1:30 p.m., or as soon thereafter as this matter may be heard in the Courtroom of the Hon. Richard Seeborg, located at the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Andrea Golloher, Marisa Freeman, Roberta Chase, James Hanks, Michael Shapiro, Brenda Brown, Gretchen Swenson, Crystal Kenny, Kelly Bottari, Renee Conover and Shanisha Sanders ("Plaintiffs"), on behalf of the Class, will and hereby do move this Court for an Order: (1) compelling Objectors-Appellants Kim Morrison, Violet Hignite and Jennifer Lynn Cochran to each post appeal bonds in the amount of $12,890 to secure payment for Plaintiffs' costs on appeal pursuant to Rule 7 of the Federal Rules of Appellate Procedure; and (2) authorizing Plaintiffs to conduct limited discovery into issues such as the merits of the Objector-Appellants' appeals, their standing and motivations to challenge the settlement in this action, and their financial arrangements with their attorneys. This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in Support thereof, the Declaration of Howard Hirsch, the record in this case, along with any oral argument that may be presented to the Court and any evidence submitted in connection therewith.

June 4, 2014                                        Respectfully Submitted,

                                                   LEXINGTON LAW GROUP

                                                   /s/ Howard Hirsch
                                                   Howard Hirsch
                                                   Attorneys for Plaintiffs

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

## INTRODUCTION

On April 25, 2014, following a year and a half of contentious litigation and settlement negotiations, the Court granted final approval of the class action settlement ("Settlement") between Plaintiffs and Defendant Todd Christopher International, Inc. d/b/a Vogue International ("Vogue).  ECF No. 79.  The Court's determination that the Settlement is fair, reasonable and adequate is unassailable.  The Settlement resolves Plaintiffs' claims that purchasers of Vogue's Organix line of hair care and skin care products (the "Products") were induced to purchase the Products by Vogue's misrepresentations on the Product labels and advertisements that the Products are organic.  The Settlement marks the first successful resolution of class action claims premised on allegedly misleading organic representations on personal care products.  The Settlement fully remedies Vogue's alleged violations of the California Organic Products Act and state consumer protection laws by requiring Vogue to change its Product labeling including, among other things, changing its brand name from Organix to OGX, and by creating a $6.5 million claim fund for the benefit of Class members.  ECF No. 62 at 6:6-13 to 7:9.  The claim fund proved sufficient to pay each and every Class member who submitted a valid claim the full amount of his or her claim, including Ms. Morrison and Ms. Hignite's claims.  Any unclaimed funds will be distributed for the Class's benefit to Consumers Union and Center for Food Safety in order to, among other things, strengthen organic labeling standards and educate consumers regarding the misbranding of personal care products.  ECF No. 64 at ¶¶ 24-29.

Despite the obvious merits of the Settlement, Objectors-Appellants Kim Morrison, Violet Hignite and Jennifer Lynn Cochran (collectively, "Objectors") have chosen to hold up the Settlement by appealing to the Ninth Circuit based on a host of meritless objections.  This is a tactic all too often used – and abused – by objectors who rely on the fact that parties to a class action settlement will reluctantly pay them to withdraw their appeals rather than endure the delay and expense of appeal.  For example, Kim Morrison's attorney, Mathew Kurilich, has previously employed this tactic, appealing and voluntarily withdrawing his clients' appeal of a large class action settlement (presumably in exchange for a payout).  *See* Declaration of Howard Hirsch

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

("Hirsch Decl."), ¶3 (referring to *Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litigation*, No. 8:10ML02151 JVS (FMOx) (C.D. Cal.), at ECF No. 3633).  Similarly, Jennifer Lynn Cochran's objection to the Settlement filed in this Court claimed that she had retained legal counsel in this matter "who hopes to apply for admission pro hac vice in the near future."  ECF No. 73 at 2.  Although Jennifer Lynn Cochran lodged her appeal with the Ninth Circuit pro se, the Notice of Appeal was filed by George Cochran, who appears to be Ms. Cochran's close relative and seeking to make a profession out of filing meritless objections to class action settlements.  Hirsch Decl., ¶4 (referring to *In re TFT-LCD (Flat Panel) Antitrust Litigation,* No. 3:07-MD-1827 SI, MDL Mo. 1827 (C.D. Cal.), at ECF No. 5601, Appendix G (compiling George Cochran's objections)).

The Objectors' appeals are baseless.  The Objectors' arguments challenging the Settlement are conclusory, fail to cite any supporting law and are devoid of any factual support.  The Court carefully considered each objection and found them to be without merit.  ECF No. 79 at 3:6-8.  In short, there is no question that the Objectors' arguments will be similarly rejected by the Ninth Circuit.

Accordingly, Plaintiffs move the Court for appeal bonds under Rule 7 of the Federal Appellate Rules of Procedure ("FRAP"), which provides: "In a civil case, the District Court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  Appeal bonds are necessary to prevent harm to the Class and to ensure that when Plaintiffs prevail on appeal, the Objectors will actually pay Plaintiffs' costs.

In addition, Plaintiffs request that the Court allow Plaintiffs to conduct limited discovery regarding the merits of the Objectors' appeals, their standing and motivations to challenge the Settlement and their financial arrangements with their attorneys.  Plaintiffs' proposed discovery requests are attached to the Hirsch Declaration at Exhibits A through C.  Courts in the Ninth Circuit "commonly" grant plaintiffs' requests to conduct discovery concerning objectors' appeals of class action settlement approval orders, *Laguna v. Coverall North America*, No. 12-55479, __ F.3d __, 2014 WL 2465049, at *6 (9th Cir. June 3, 2014), and have determined that substantially

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

1   similar discovery requests are relevant and proper, *In re Netflix Priv. Litig.*, 5:11-CV-00379-EJD,

2   2013 WL 6173772, at **3-4 (N.D. Cal. November 25, 2013).

3                                                    **BACKGROUND**

4          The Court granted preliminary approval of the Settlement on October 7, 2013.  ECF No.

5   60.  Following preliminary approval of the Settlement, the Class notice was published through a

6   robust notice program resulting in over 300 million opportunities for Class members to view the

7   Notice.  ECF No. 74-1, ¶ 2 & Exh. B.  The Class's response was overwhelmingly favorable; more

8   than 68,000 Class members expressly endorsed the Settlement by filing claims with the Settlement

9   Administrator, including Kim Morrison and Violet Hignite.  *Id.*  These claimants purchased a total

10  of 431,028 Products, which will result in cash payments to Class members of more than $1.7

11  million.  *Id.*  Every Class member who submitted a valid claim, including Kim Morrison and

12  Violet Hignite, will be paid in full.  Although the Class members demonstrated their

13  overwhelming support for the Settlement, four Class members, including Kim Morrison, Violet

14  Hignite and Jennifer Lynn Cochran, filed cursory objections to the Settlement.  ECF Nos. 70-73.

15         On February 3, 2014, Kim Morrison submitted a cursory objection to the Settlement on the

16  sole ground that the class notice was deficient because it did not inform Class members of the

17  likelihood that their claims would be diluted.  ECF No. 70.

18         On February 5, 2014, Violet Hignite submitted generalized objections to the Settlement on

19  the grounds that: (1) the cy pres distribution is improper; (2) the attorneys' fees award is excessive

20  and not supported by billing records; (3) the class period should be four years long instead of five;

21  and (4) the release of Vogue's liability is too broad.  ECF No. 72.

22         On February 7, 2014, Jennifer Lynn Cochran submitted a boilerplate objection stating that

23  she "believes the award of attorneys' fees to class counsel is unreasonably high for a class action

24  of this nature, scope and size," and also noting that she "concurs with the arguments opposing the

25  class settlement agreement asserted in William Gerald Barden's objection."  ECF No. 73.

26         None of the Objectors cited a single legal authority supporting their objections.  Nor did

27  the Objectors offer any evidentiary or factual support for their objections.  At the final fairness

28

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

hearing – which none of the Objectors attended – the Court carefully considered each objection to the Settlement and rejected each objection as lacking any merit.  Likewise, the Court's Order granting final approval of the Settlement states: "The Court has expressly considered the four written objections that were submitted, and finds that none of them raise issues that would warrant rejection of the settlement."  ECF No. 79 at 3:6-8.  Nevertheless, in May 2014, the Objectors lodged their appeals to the Ninth Circuit challenging the Court's Order granting final approval of the Settlement.

Prior to filing this Motion, in an effort to obviate any need for the Court's intervention in this matter, Plaintiffs provided the Objectors with a detailed letter which outlined the legal and factual deficiencies in their appeals and requested that the Objectors: (1) either drop their appeals or provide support for their arguments; (2) post an appeal bond in the amount of $12,890; and (3) respond to limited discovery regarding their appeals.  Decl. Hirsch, ¶2.  In response, the Objectors refused to post appeal bonds or respond to any discovery relevant to their appeals.  *Id.*  The Objectors also did not provide any factual or legal support for their challenges to the Settlement.  *Id.*

## **ARGUMENT**

### I. **REQUIRING THE OBJECTORS TO POST APPEAL BONDS AS A CONDITION TO PROSECUTING THEIR APPEALS IS APPROPRIATE.**

As many other courts in this District have recognized, objectors to class action settlements should be required to post appeal bonds before they can use the time and expense of an appeal to hold a class action settlement hostage.  FRAP 7 provides that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  The purpose of a FRAP 7 bond is to "protect an appellee against the risk of nonpayment by an unsuccessful appellant."  *Embry v. ACER Am. Corp.*, C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012) (quoting *Fleury v. Richemont N. Am., Inc.*, C-05-4525 EMC, 2008 WL 4680033, at **6-8 (N.D. Cal. October 21, 2008)).  "[T]he question of the need for a bond, as well its amount, are left to the discretion of the trial court."  *Fleury*, 2008 WL

1   4680033, at *6.

2          When objectors threaten a fair and reasonable class action settlement with meritless

3   appeals, as here, district courts routinely require the objectors to post bonds.  *See Netflix,* 2013 WL

4   6173772, at **3-4; *Miletak v. Allstate Ins. Co.*, C 06-03778 JW, 2012 WL 3686785, **1-2 (N.D.

5   Cal. August 27, 2012), **1-2; *Fleury*, 2008 WL 4680033, at **6-8; *In re Pharm. Indus. Average*

6   *Wholesale Price Litig.*, 520 F. Supp. 2d 274, 277-78 (D. Mass. 2007) ("[r]equiring objectors to

7   post a bond will ensure that a class [opposing] a frivolous appeal will not be injured or held up by

8   spoilers").  In evaluating a proposed appellate bond, courts consider: (1) the appellant's financial

9   ability to post a bond; (2) the risk that the appellant will not pay the appellee's costs if the appeal

10   is unsuccessful; and (3) an assessment of the likelihood that the appellant will lose the appeal and

11   be subject to costs.  *Netflix*, 2013 WL 6173772, at *3;  *Fleury,* 2008 WL 4680033, at *7 (applying

12   *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007)).  Each factor favors

13   imposing bonds on the Objectors in this case.

14          **A.     The Financial Ability Factor Weighs In Favor Of Requiring The Objectors To**
15              **Post Appeal Bonds.**

16          The first factor – the Objectors' ability to pay – is met where there is "no indication

17   that [the appellant] is financially unable to post bond."  *Fleury*, 2008 WL 4680033, at *7.  Even

18   where an appellant claims inability to pay, this factor only weighs against imposing a bond where

19   the appellant affirmatively adduces actual evidence of inability to pay.  In other words, where the

20   objector "has 'submitted no financial information to indicate that she is financially unable to post a

21   bond,' this factor weighs in favor of imposing a bond."  *Miletak*, 2012 WL 3686785, at *2 n. 4.

22   (citing *Fleury*, 2008 WL 4680033, at *7).  Moreover, even if an objector provides some evidence

23   of a financial hardship in posting the bond, "the significant risk of non-payment of costs and the

24   lack of merit in Objectors' appeals" can nonetheless tip this factor in favor of requiring a bond.  *In*

25   *re MagSafe Apple Power Adapter Litig.*, C 09-01911 JW, 2012 WL 2339721, at *2 (N.D. Cal.

26   May 31, 2012), *vacated and remanded on other grounds*, No. 12-15757, 2014 WL 1624493 (9th

27   Cir. 2014).

28

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

1    Here, the evidence suggests that the Objectors will be able to pay the bonds.  First, each

2    Objector has paid the $505 filing fee with the Ninth Circuit. Second, and most importantly, to

3    date, the "Objector[]s . . . ha[ve] presented no evidence that [they] would be unable to pay an

4    appeal bond."  *Miletak*, 2012 WL 3686785, at *2.  Indeed, the Objectors failed to provide any

5    evidence of inability to pay an appeal bond despite Plaintiffs' detailed letter establishing the

6    propriety of a $12,890 bond for each Objector in this case.  Thus, this factor weighs in favor of

7    imposing an appeal bond.

8    Finally, an objector's habit of filing frivolous appeals further demonstrates an ability to

9    pay.  *See Gemelas v. Dannon Co.*, No. 1:08-CV-236, 2010 WL 3703811, *2 (N.D. Ohio Aug. 31,

10   2010) (noting that a serial objector's payment of filing fees in other appeals demonstrates the

11   objector's financial ability to pay appeal bond).  In this case, as noted above, Ms. Morrison's

12   attorney has a history of appealing a class action settlement and subsequently dismissing the

13   appeal.  Hirsch Decl., ¶3.  Similarly, George Cochran, who filed Ms. Cochran's notice of appeal,

14   has filed numerous meritless objections to class action settlements.  *Id.*, ¶4.

15
16   **B.      The Risk That The Out-Of-State Objectors Will Not Pay Plaintiffs' Costs If
             The Court's Judgment Is Affirmed On Appeal Weighs In Favor Of Requiring
             Appeal Bonds.**

17
18   The second factor – the risk that the Objectors will not pay Plaintiffs' costs on appeal –

19   provides additional reason to grant this Motion.  When an appellant is located outside of the forum

20   state, the difficulty of collecting payment post-appeal is heightened, and thus, weighs in favor of a

21   bond. *Netflix,* 2013 WL 6173772, at *3 ("Courts in the Northern District of California have

22   recognized the difficulty and risk associated with collecting costs from out-of-state appellants.");

23   *Embry*, 2012 WL 2055030, at *1 (same).

24   Here, Kim Morrison is located in Seattle, Washington and Jennifer Lynn Cochran is

25   located in Louisville, Kentucky.  ECF Nos. 70 & 73.  Should Ms. Morrison and Ms. Cochran

26   refuse to pay Plaintiffs' costs on appeal, Class counsel would be required to travel to Washington

27   to institute collection proceedings and recover their costs expended on appeal.  Because of the

28   "potential difficulties and the risk associated with collecting costs from the out-of-state

Objector[s], . . . this factor provides reason for the imposition of an appeal bond." *Netflix,* 2013 WL 6173772, at *3.

Furthermore, while Objector Violet Hignite resides in California, that fact does not weigh against imposing a bond. Rather, Ms. Hignite's location in California simply renders this factor neutral with regard to Ms. Hignite. *See Miletak*, 2012 WL 3686785, at *2.

### C.   The Patent Frivolousness Of The Objectors' Appeals Warrants The Imposition Of Appeal Bonds.

The third factor – the likelihood that the Objectors will lose their appeals and be subject to costs – weighs in favor of imposing appeal bonds in this case. *See Netflix*, 2013 WL 6173772, at *4. The Court thoroughly reviewed the Settlement and determined it was "fair, reasonable and adequate" pursuant to Rule 23(e). ECF No. 79. After careful consideration, the Court rejected all of the Objectors' challenges to the Settlement. *Id.* The Court's conclusion here is undeniably correct as the arguments of all three Objectors are conclusory, fail to cite any supporting law and are devoid of any evidentiary or factual support. As established below, there can be no serious question that the Objectors' challenges to the Settlement "are without merit and will almost certainly be rejected by the Ninth Circuit Court of Appeal." *In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513, at *2 (D. Nev. March 8, 2010). This is especially true given that the Ninth Circuit's "review of a class action settlement is extremely limited, and [the Court] will only reverse upon a strong showing that the district court's decision was a clear abuse of discretion." *Laguna*, 2014 WL 2465049, at *1 (internal quotations and citations omitted). Accordingly, the Objectors should be required to post bonds.

### 1.   Ms. Morrison's Appeal Is Meritless.

Ms. Morrison's appeal is presumably based on her objection that the notice to the Class was insufficient because the notice did not adequately warn Class members that the $4 per product claim amount could be diluted if the claims exceed the fund. ECF No. 69 at 2. Ms. Morrison's appeal on this ground is frivolous because there is no requirement to include that level of detail in

the Class notice, and because the notice did include that precise information in a section headed: "What if the Fund Is Too Small?  Too Large?"  *See* ECF No. 56-2.  Most importantly, Ms. Morrison's objection is unfounded because the fund has proven to be more than ample to ensure that each and every Class member who submitted a valid claim, including Ms. Morrison, will be paid in full.  Thus, while Ms. Morrison may believe that the notice should have more prominently warned Class members of the possibility of dilution, there was in fact no such dilution.  Consequently, a more prominent warning could have served no possible benefit to the Class (and, in fact, may have harmed Class members by discouraging them from submitting valid claims).

Although "claims made" settlements are commonplace in consumer product cases, Ms. Morrison also objects that the Settlement requires class members to submit claims.  ECF No. 69 at 2-3.  According to Ms. Morrison, the Settlement should have provided automatic refunds to anyone who purchased the Products.  However, because Vogue does not sell the Products directly to consumers, Vogue has no record of who purchased the Products.  Nor do retailers typically maintain records of the name and contact information of individual purchasers of particular products.  Ms. Morrison has not offered any means by which she proposes to identify individuals who purchased the Products.  Furthermore, while Ms. Morrison's primary concern appears to be that Vogue will somehow benefit from the claims-made structure of the Settlement, the Settlement appropriately distributes any remaining funds to non-profit charitable organizations doing work that is connected to the underlying claims of the Class.  Thus, Ms. Morrison's complaint that "if 10% [of Class members] make a claim, the defendant will get to get away with 90% of its wrongdoing" is simply wrong; Vogue will pay $6.5 million irrespective of how many Class members submit claims.

### 2.      Ms. Hignite's Appeal Is Meritless.

Ms. Hignite's appeal is presumably based on her objections that: (1) the cy pres distribution is improper because any excess funds from the Settlement should be used to increase payments to claimants or re-notice the Settlement; (2) the attorneys' fees award is excessive and not supported by billing records; (3) the Class period should be four years long instead of five; and

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

1   (4) the release of Vogue's liability is too broad.  ECF No. 72.  Ms. Hignite's appeal will fail

2   because each of these objections is frivolous.

3          First, the Settlement's cy pres distribution is an appropriate mechanism for distributing

4   unclaimed Settlement funds.  *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011);

5   *Lymburner v. U.S. Fin. Funding, Inc.*, C-08-00325 EDL, 2012 WL 398816, *4 (N.D. Cal.

6   February 7, 2012) ("[t]he law generally favors distributing unclaimed funds for a purpose as near

7   as possible to the legitimate objectives underlying the lawsuit.").  Moreover, distributing all of the

8   unclaimed funds to the class members who made claims, including Ms. Hignite, would prejudice

9   the silent class members – who will benefit indirectly from the cy pres awards – and result in a

10  windfall for the claimants.  *See In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1053 (S.D.

11  Cal. 2013).  Further, while Ms. Hignite suggests that the Settlement be re-noticed in an attempt to

12  reach additional class members, she does not take issue with the notice program.  In fact,

13  additional notice would be highly unlikely to result in more claimants given that the class notice

14  was widely disseminated via print and electronic publication to millions of persons – resulting in a

15  significantly high percentage (26.5%) of distribution of the claim fund relative to other consumer

16  class cases.  *See, e.g., In re Apple iPhone 4 Products Liab. Litig.*, 5:10-MD-2188 RMW, 2012 WL

17  3283432, *1 (N.D. Cal. August 10, 2012) (approving settlement where between 0.16% and 0.28%

18  of class made claims).

19         Second, Ms. Hignite's cursory objection that the attorneys' fee award "seems high" and

20  that Class counsel should "post their actual time records" is unfounded.  Ms. Hignite completely

21  fails to articulate how or why the abundant legal support and detailed declarations of Class counsel

22  submitted to the Court – which establish the propriety of the award by describing the specific

23  nature of the work performed and detailing the number of hours Class counsel were reasonably

24  required to expend on the case (ECF Nos. 62, 64) – are insufficient.  In any case, the law does not

25  require counsel to submit their contemporaneous time records to the Court.  *See, e.g., Martino v.

26  Denevi*, 227 Cal. Rptr. 354, 358 (Cal. App. 1st Dist. 1986).

27         Third, Ms. Hignite's objection that the Settlement improperly allows Class members with

28

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

1    untimely claims to dilute the claim fund is simply wrong.  Even assuming Ms. Hignite is correct

2    that "many states have four-year limitations periods" – a premise for which she cites no authority

3    – the length of the Class period has no impact on the adequacy, reasonableness or fairness of the

4    Settlement.  Ms. Hignite's essential concern is that the claim fund will be diluted by Class

5    members with "time-barred" claims.  However, no claims will be diluted as the claim fund has

6    proven to be more than ample to ensure that each and every Class member who submitted a valid

7    claim (including Ms. Hignite herself) will be paid in full.

8          Finally, Ms. Hignite objects that that the Settlement's "release is overbroad because the

9    settlement agreement provides a release for all advertising and marketing claims."  Yet again, Ms.

10   Hignite is simply mistaken.  The Settlement releases only claims that "were asserted or reasonably

11   could have been asserted in the Action" by Plaintiffs.  ECF No. 56-2 at 15:1.  Thus, the release is

12   appropriately limited to the organic claims at issue in this case.  Courts in the Northern District

13   routinely overrule identical objections regarding the scope of a class settlement's release.  *See*

14   *Lemus v. H & R Block Enterprises LLC.*, C 09-3179 SI, 2012 WL 3638550, *4 (N.D. Cal. August

15   22, 2012) (overruling objection that release of class settlement overbroad where "[t]he release is

16   limited to claims based on facts and claims alleged in this case").

17                      **3.      Ms. Cochran's Appeal Is Meritless.**

18         Ms. Cochran's appeal is presumably based on her objection that she "believes the award of

19   attorneys' fees to Class counsel is unreasonably high for a class action of this nature, scope and

20   size."  ECF No. 73 at 2.  This cursory objection is unfounded, and fails for the same reasons stated

21   above as to Ms. Hignite.

22         Ms. Cochran's appeal may also be based on the arguments raised by objector William

23   Gerald Barden since her objection states that she "concur[s] with the arguments opposing the class

24   Settlement agreement asserted in William Gerald Barden's objection."  ECF No. 73.  This vague

25   statement does not satisfy Ms. Cochran's obligation to articulate the legal and factual basis of her

26   objection.  While it is unclear, it appears that she may have been improperly attempting to

27   incorporate Mr. Barden's objections by reference.  Nonetheless, each of Mr. Barden's objections

28

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

1  is frivolous.

2      First, Mr. Barden objects that the monetary recovery of the Settlement ($4.00 per Product

3  purchased, with a seven Product purchase limit) is insufficient.  Mr. Barden bases this objection

4  on his wholly unsupported factual claim that Class Members "purchased approximately 40 or

5  more" Products during the Class period.  ECF No. 71 at 5-6.  Objections that merely suggest that

6  certain aspects of the Settlement are imperfect rather than calling into question the fairness,

7  reasonableness or adequacy of the Settlement, as here, must be overruled.  *Hanlon v. Chrysler*

8  *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Of course it is possible, as many of the objectors'

9  affidavits imply, that the settlement could have been better.  But this possibility does not mean the

10  settlement presented was not fair, reasonable or adequate.");  *In re Netflix Priv. Litig.*, 5:11-CV-

11  00379 EJD, 2013 WL 1120801, *12 (N.D. Cal. March 18, 2013) (overruling "[o]bjections [that]

12  merely suggest a different or arguably better settlement award rather than sufficiently calling into

13  question the fairness or adequacy of the Agreement.").

14      Mr. Barden's objection on this ground also ignores the facts.  As for the $4.00 per Product

15  limit, that amount represents over 50% of the suggested retail price of the Products even though

16  the Products are often sold at a lower price and despite the opinion of Plaintiffs' experts that the

17  maximum organic premium charged for the products was much lower.  *See* ECF No. 64, at ¶ 22.

18  As for the seven Product Purchase limit, this represents a reasonable approximation of the

19  maximum number of Products that would be purchased by a typical class member during the

20  relevant time period.

21      Second, Mr. Barden objects that the Settlement's injunctive relief is inadequate because

22  Vogue is not required to stop using the "Organix" brand name and the use of the word "organic"

23  to sell the products until July 1, 2015.  This objection fails.  Unlike many false advertising class

24  action settlements that require subtle, if any, modifications to labels and advertisements, here

25  Vogue is required to change the name of its nationally recognized and federally-registered brand.

26  Moreover, the July 1, 2015 compliance date is the result of arms-length negotiation by

27  experienced class counsel who advocated zealously on behalf of the Class while considering,

28

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

among other things, the strengths and weaknesses of Plaintiffs' case, as well as the costs and risks of continued litigation.  Allowing additional time to implement the broad injunctive relief required by the Settlement is reasonable and in the best interest of the Class.  Indeed, Barden's objection utterly fails to account for the reality that, if Class counsel had not negotiated the Settlement at this juncture, this litigation would have proceeded to class certification (followed by an almost certain appeal of the Court's class certification decision), summary judgment motions and trial.  As a result, assuming that Plaintiffs prevailed at each of these phases through final judgment, Plaintiffs would have been unable to secure the injunctive terms the Settlement provides until well after July 1, 2015.

In sum, because the Court "engaged in an extensive analysis of the Settlement, including the merits of the objections, and found the Settlement to be fair, adequate, and reasonable," this factor – the likelihood that the Objectors will lose on appeal – weighs heavily in favor of imposing bonds on the Objectors.  *See Netflix*, 2013 WL 6173772, at *4.

**D.     Appeal Bonds of $12,890 Are Necessary To Cover The Costs Of the Objectors' Frivolous Appeals.**

Once it is determined that an appeal bond is appropriate, the Court must determine the proper amount for the bond.  The amount of the bond is a matter left to the sound discretion of the district court.  *Yingling v. eBay, Inc.*, C 09-01733 JW, 2011 WL 2790181, at *1 (N.D. Cal. July 5, 2011).  Importantly, however, the appeal bond must be set at the "amount necessary to ensure payment of costs on appeal."  Fed. R. App. P. 7; *see also Wal-Mart*, 2010 WL 786513, at *2.

Accordingly, Plaintiffs seek two categories of allowable costs:  (1) the FRAP 39 costs related to the appeal; and (2) the additional costs associated with administration of the Settlement caused by the delay in disbursement of the settlement fund to the Class.  As demonstrated below, $12,890 is a reasonable estimate of such costs.

**1.     Plaintiffs' FRAP 39 Costs Related To The Appeals.**

An appeal bond should provide for the costs of printing and producing copies of briefs, appendices, records and court reporter transcripts.  Fed. R. App. P. 39(c) & (e); 9th Cir. Rule 39-1.

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

1   Courts often impose appeal bonds to the tune of thousands of dollars in FRAP 39 costs alone.

2   *Miletak*, 2012 WL 3686785, at *2 (granting $10,000 in Rule 39 appellate costs alone).  Plaintiffs

3   estimate that it will cost $175 to print, copy and mail their opposition brief in each appeal.  Hirsch

4   Decl., ¶5.

5               **2.      Plaintiffs' Administrative Costs As A Result Of The Appeals.**

6           The Court should also include the costs of continued Settlement administration during the

7   length of the appeal period.  Costs securable by a FRAP 7 appeal bond may include the ongoing

8   costs of settlement administration while an appeal is pending.  Specifically, "costs on appeal"

9   under FRAP 7 is not limited to those costs enumerated in FRAP 39 but rather includes all costs

10  recoverable under an applicable statute or rule.  *See Azizian*, 499 F.3d at 958.  Accordingly,

11  district courts in the Ninth Circuit have "interpreted 'costs' broadly in the context of class

12  settlements to include increased expenses in settlement administration" and have required

13  substantial appeal bonds to secure such costs during the pendency of appeals.  *Dennings v.*

14  *Clearwire Corp.*, 928 F. Supp. 2d 1270, 1272 (W.D. Wash. 2013) (imposing bond of $41,150

15  including $39,150 in class settlement administration expenses); *Miletak*, 2012 WL 3686785, at *2

16  ("the Court finds good cause to impose an appeal bond in the amount of $60,000, which represents

17  solely the appellate costs and administrative costs requested by Plaintiff").

18          For instance, in *Netflix Privacy Litigation*, the court imposed a bond of $21,519, including

19  $21,344 in expenses for  "maintaining and administering the settlement website and toll-free

20  phone number, answering questions from class members, managing and filing taxes for the

21  settlement and escrow account, and paying monthly storage costs."  2013 WL 6173772, at *4.

22  Although one court in this District refused to include the additional costs of administering the

23  settlement in an appeal bond, the court's decision was largely based on the appellee's failure to

24  justify with specificity the anticipated additional costs.  *See Schulken v. Washington Mut. Bank*,

25  09-CV-02708-LHK, 2013 WL 1345716, at *8 (N.D. Cal. April 2, 2013); *see also Netflix,* 2013

26  WL 6173772, at *4 n. 2 (distinguishing *Schulken* on the ground that "Plaintiffs in this case

27  concretely identified the basis for their estimate and distinguished the projected costs from

28

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

attorneys' fees.").   In this case, in contrast,  Plaintiffs have precisely identified the costs that will be incurred as a result of the appeals, as explained in detail below.

The increased settlement administration expenses as a result of the delay caused by the Objectors' appeals will include, among other expenses, costs necessary to extend maintenance of the Settlement website and to process and respond to written and verbal inquiries about the status of claims processing during the appeals.  Hirsch Decl., ¶6.  Plaintiffs estimate the appeal could take up to 18 months to resolve.  *See Dennings*, 928 F. Supp. 2d 1270, 1272 (W.D. Wash. 2013) (the median length of a Ninth Circuit appeal is 17.4 months).  Plaintiffs have conferred with the Settlement Administrator, who estimates the costs of Settlement administration pending the appeals will be approximately $12,715.  Hirsch Decl., ¶6.  Accordingly, adding in $175 for FRAP 39 costs, $12,890 is a reasonable estimate of the total costs to be incurred during the pendency of the appeals and for which Plaintiffs are entitled to security in the present circumstances.

## II.   ALLOWING LIMITED DISCOVERY RELEVANT TO THE OBJECTORS' APPEALS IS APPROPRIATE.

The Court should allow additional discovery so that Plaintiffs can determine whether the Objectors are legitimately seeking to represent the best interests of the Class, or whether they are simply in it for their own and their attorneys' monetary gain.  As the Ninth Circuit recently held, courts "commonly" allow plaintiffs-appellees' to pursue discovery from class action objectors-appellants, and the district court's decision to grant such discovery is reviewed for abuse of discretion.  *Laguna*, No. 12-55479, __ F.3d __, 2014 WL 2465049, at *6 (9th Cir. June 3, 2014); *see also Netflix*, 2013 WL 6173772, *2; *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 281 F.R.D. 531, 533-34 (N.D. Cal. 2012); *TFT-LCD (Flat Panel) Antitrust Litig.*, 289 F.R.D. 548, 553-54 (N.D. Cal. 2013); *MagSafe*, 2012 WL 2339721, at *2.  This is because "[a]n objector who voluntarily appears in litigation is properly subject to discovery."  *Netflix*, 2013 WL 6173772, *2. In *Laguna*, for example, the Ninth Circuit held that the district court did not abuse its discretion by requiring an objector-appellant to appear for a deposition in light of the deposition's likely "utility to the court and the scant possibility that [the objector] would be harassed or intimidated by giving

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

1    a deposition." *Laguna*, 2014 WL 2465049, at *6 .

2          Here, Plaintiffs' proposed discovery is narrowly tailored to seek information that has been

3    deemed highly relevant by Northern District courts in cases where objectors challenged class

4    action settlements.  *See, e.g., Netflix*, 2013 WL 6173772, at *2; *In re CRT,* 281 F.R.D. at 533;

5    *MagSafe*, 2012 WL 2339721, at *2.  Relevant information concerning an objectors' appeal of a

6    class action settlement includes: "the objector's standing, the bases for the objections, [the

7    objector's] role in objecting to this and other class settlements, and [the objector's] relationships

8    with the counsel that may affect the merits of the objection . . . [D]iscovery may [also] be utilized

9    to ensure that each objector is capable of posting bond in the full amount."  *Netflix*, 2013 WL

10   6173772, *2.  Plaintiffs' proposed discovery requests seek exactly these categories of information.

11   *See* Hirsch Decl., ¶2, Exhs. A to C.  Thus, the "utility to the court" of Plaintiffs' proposed

12   discovery is substantial, whereas there is no possibility that the discovery constitutes

13   "harrass[ment]" or "intimidat[ion]" of the objectors.  *See Laguna,* 2014 WL 2465049, at *6.

14

15

16

17

18

19

20

21

22

23

24

25

26

**27**

**28**

**PLAINTIFFS' MOTION FOR APPEAL BONDS & POST-JUDGMENT DISCOVERY**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant an Order: (1) requiring Kim Morrison, Violet Hignite and Jennifer Lynn Cochran to post appeal bonds in the amount of $12,890; and (2) authorizing Plaintiffs to conduct limited discovery concerning the Objectors' appeals as reflected by the discovery requests attached to the Hirsch Declaration as Exhibits A through C.

DATED: June 4, 2014

Respectfully submitted,

LEXINGTON LAW GROUP

By:   /s/ Howard Hirsch
        Attorneys for Plaintiffs, on behalf of themselves
        and all others similarly situated